582 P.2d 660

ARIZONA DEPARTMENT OF ECO-
NOMIC SECURITY, Appellant,

v.

Manuel VALDEZ, Appellee.

No. 1 CA–CIV 3672.

Court of Appeals of Arizona,
Division 1,
Department A.

July 27, 1978.

Bruce E. Babbitt, former Atty. Gen., by James A. Tucker, Asst. Atty. Gen., Phoenix, for appellant.

Coconino County Legal Aid by Donald H. Bayles, Jr., Robert L. Miller, Douglas Meiklejohn, Flagstaff, and Southern Arizona Legal Aid by Leslie Nixon, Tucson, for appellee.

## OPINION

FROEB, Chief Judge, Division 1.

The Department of Economic Security ruled that Manuel Valdez was temporarily disqualified from receiving unemployment benefits because be was discharged from his employment for insubordination. The ruling followed a determination that Valdez, without explanation, refused to follow reasonable instructions. The trial court reviewed the Department's decision on the record and reversed it after determining that certain Department rules not considered by the Department applied. Having so determined, the trial court found no evidence to support findings which would be necessary if the rules were applied.

The facts found by the appeal tribunal of the Department are as follows. Valdez had

worked as a warehouseman for Babbitt Brothers Trading Company for approximately one year. On Monday, March 17, 1975, the warehouse manager informed the warehouse crew that the entire crew would have to work overtime that evening to unload a truck of cast-iron stoves. Regular quitting time was 5:00 p. m. Valdez refused to work overtime and informed the warehouse manager that he had a personal problem. He did not go into detail concerning the problem or explain why he could not work past 5:00 p. m. Valdez was again told that he would have to work overtime but he again refused and clocked out at 5:00 p. m. The next day he was told that he was discharged. Later, at the Department hearing, Valdez explained that he had been having marital problems and that he wanted to go home right after work that evening and discuss the problems with his wife.

The Department upheld the discharge under A.R.S. § 23–775(2), which states:

An individual shall be disqualified for benefits:

\* \* \* \* \* \*

2. For the ten consecutive weeks immediately subsequent to first filing a valid claim after he has been discharged for wilful or negligent misconduct connected with his work, if so found by the department, and in addition his maximum benefit amount shall be reduced by an amount equivalent to eight times his weekly benefit amount.

In arriving at the conclusion that Valdez's actions constituted misconduct under the statute, the Department found that the order for overtime work was reasonable and, in the absence of any explanation by Valdez, the refusal was insubordination. The Department determined that the insubordination was misconduct.[1]

The reasonableness of the overtime order is established in the evidence presented to the Department. It was necessary to unload the heavy iron stoves from the truck. The warehouse manager ordered all the crew members to work overtime as a safety measure to avoid overwork and injuries. Prior to the incident here involved, whenever overtime work was needed by fewer than all the crew members, volunteers were recruited to do the job. The union contract then in existence required employees to work overtime when needed, and the evidence indicated that this was the procedure prior to the union contract. The warehouse manager testified that if Valdez had given a good reason why he could not work overtime on the day in question, he would not have been required to do so. Valdez stated that he felt that his reason for not wanting to work overtime "was really none of their business."

We cannot say that the Department erred in finding that the overtime order was reasonable and that Valdez's refusal to obey it was an act of insubordination under Benefit Policy Rule 255.05 and, thus, misconduct under A.R.S. § 23–775(2). See *Employment Security Commission v. Myers*, 17 Ariz.App. 87, 495 P.2d 857 (1972). See also *Davis v. Unemployment Compensation Board of Review*, 187 Pa.Super. 116, 144 A.2d 452 (1958).

We turn to the findings made by the trial court upon which the Department's decision was reversed. Relying upon Benefit Policy Rule 485.05,[2] the trial court found no evidence that the overtime "rule" was reasonably publicized or enforced or that Valdez knew of the "rule."

1. The Department's decision is supported by Benefit Policy Rule 255.05 which states in part:
Generally, insubordination constitutes misconduct connected with the work. An employer has the right to expect that reasonable orders, given in a civil manner, will be followed and that a supervisor's authority will be respected and not undermined.

2. Benefit Policy Rule 485.05 reads as follows:
An employee, discharged for violating a company rule, generally is considered discharged for misconduct connected with his work. This principle is based on the theory that, when hired, an employee agrees to abide by the rules of his employer. In this section we consider cases involving rules peculiar to a particular employer, and not to rules constituting the general code of industrial misconduct.

In order for misconduct connected with his work to be found, it must be determined that the claimant knew, or should have known of

■ Since Benefit Policy Rule 485.05 is not mentioned in the Department's decision and its applicability is, therefore, not specifically ruled on by the Department, we are free to assume that the Department either believed the rule to be inapplicable, or, if applicable, that its requirements were satisfied. There is no indication that Valdez was discharged for violating a "company rule." He was discharged because he refused to obey a reasonable order of the warehouse manager. The misconduct here was insubordination. The rule relating to violation of a company rule was not involved.

The second finding made by the trial court, which also was a basis for reversal, related to Benefit Policy Rule 45.05.[3] The trial court found that there was no substantial evidence to justify a finding of misconduct which either "did or could affect the employer."

■ We disagree with the trial court in its application of Rule 45.05 to the facts. The issue is not whether the employer was able to get the job done with one less worker. The job was completed in fact and without any substantial burden by reason of Valdez's absence. We do not conceive this to be the test where the misconduct is insubordination. In such a case, an adverse effect can be presumed where an employee refuses to comply with a reasonable order. This is suggested by the first paragraph of Rule 45.05. The refusal of a reasonable order undermines the employer's authority and, thus, interferes with the functioning of the business.

For these reasons, the judgment of the trial court is reversed and the decision of the Department is reinstated.

HAIRE, P. J., and NELSON, J., concur.

---

the rule and that the rule is enforced. The rule must be reasonably publicized or all employees must have been informed of the rule.

Secondly, the rule must be reasonable. Recognition must be accorded to the type of business in which the employer is engaged, and other surrounding circumstances. The rule must be reasonable in light of public policy. A rule should not constitute an infringement upon the recognized rights and privileges of workers as individuals. Rules which affect the employee's conduct outside the employer's premises and could not possibly affect the employer's interests are generally considered unreasonable. Normally, the violation of a reasonable company rule may be presumed to react adversely upon the employer's interests.

3. Benefit Policy Rule 45.05 reads:

When misconduct is indicated, the effect of the act for which an individual is discharged, in its relation to the employer's interests, must be considered. In order for the act to be considered misconduct connected with the work, it must appear that the results are, or could reasonably be expected to be, adverse to the employer's interests. However, in violation of rules generally applicable to all employment relations, such as prompt and regular attendance, dishonesty, violation of law on the employer's premises or against the employer as such, the disregard of the employer's interest is strongly presumed.

Several qualifications must always be considered in this connection. First, the interest of the employer which is affected must arise from his position as an employer, and not as an individual. Thus, if an employee, on Sunday or his day off, collides with the employer's car, and is therefore discharged, the interest of the employer which is adversely affected is not one arising out of his relation as an employer, and the claimant is deemed discharged for reasons other than misconduct.

Second, the employer need not have suffered actual damage from the particular act, but it must be shown that his interests might have been adversely affected by the commission or omission of the act in question. An example of this arises when an employee, in violation of a company rule, smokes in a room of explosives. Although no explosion occurs, he is discharged. This is considered misconduct, although the employer has not actually been hurt, since a reasonably prudent man could foresee that injury could have resulted as a consequence of his act.

In each case, therefore, before it may be held that an employee is discharged for misconduct connected with his work, it must appear, in addition to the other elements of misconduct, that the result of the commission or omission of the act did, or could reasonably be expected to, adversely affect the interests of the employer.

In any case in which the violation of an implied obligation to an employer has caused dismissal, warnings preceding the dismissal assume importance in determining whether there was misconduct, since they draw the worker's attention to the existence of the implied obligation.